Jarom J. Yates
State Bar No. 24071134
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: 214.651.5000
Facsimile: 214.651.5490
Email: jarom.yates@haynesboone.com

John B. Nolan
Admitted *Pro hac vice*
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
Telephone: 860.275.0100
Facsimile: 860.275.0343
Email: jbnolan@daypitney.com

James C. Jacobsen
Assistant Attorney General
Appearing Pursuant to L.B.R. 2090-1(f)
**NEW MEXICO ATTORNEY GENERAL'S OFFICE**
111 Lomas Blvd. NW, Suite 300
Albuquerque, NM 87102-2368
Telephone: 505.222.9085
Facsimile: 505.222.9006
jjacobsen@nmag.gov

Kenneth W. Ritt
Admitted *Pro hac vice*
**DAY PITNEY, LLP**
One Canterbury Green
Stamford, CT 06901
Telephone: 203.977.7300
Facsimile: 203.977.7301
Email: kwritt@daypitney.com

**ATTORNEYS FOR NEW MEXICO STATE INVESTMENT COUNCIL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| MARC ANTHONY CORRERA | § | CASE NO. 16-30728-SGJ-7 |
| | § | |
| Debtor. | § | |

### AMENDED MOTION OF NEW MEXICO STATE INVESTMENT COUNCIL FOR RELIEF FROM THE AUTOMATIC STAY

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, DALLAS, TEXAS BEFORE CLOSE OF BUSINESS ON MAY 4, 2016, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

The New Mexico State Investment Council ("NMSIC" or the "Council") hereby files this *Amended Motion of New Mexico State Investment Council for Relief from the Automatic Stay* (the "Motion") and respectfully represents as follows:

### Preliminary Statement[1]

1. NMSIC has been pursuing a Pay-to-Play Action against the Debtor and others (including the Debtor's father) in New Mexico State District Court since 2011. NMSIC's efforts have been broad and effective, resulting in settlements for many millions of dollars for the citizens of New Mexico. Now, five years later the only defendants that remain in the Pay-to-Play Action are the Debtor, his father, former New Mexico State Investment Officer Gary Bland ("Bland") and two investment professionals. Prior to issuance of the automatic stay, depositions of the debtor and his father had been scheduled for late February 2016 by agreement with their counsel. Trial in the Pay-to-Play Action is still currently scheduled for November 2016; final resolution of this long saga is close at hand.

2. Lifting of the automatic stay is proper in this case. Principles of judicial economy, comity, and timely administration of the estate weigh heavily in favor of lifting the automatic stay to allow NMSIC to liquidate its claim against the Debtor in the New Mexico State District Court. The Debtor's estate will also be benefited by the prompt liquidation of NMSIC's claims against the Debtor that will occur if the Court grant's the Motion and lifts the stay. Furthermore, the timing of this Bankruptcy Case suggests that the Debtor and his father have been improperly thwarting NMSIC's rights to discovery in the Pay-to-Play Action – a significant abuse of the bankruptcy process. As such, NMSIC respectfully requests that the Court lift the

---

[1] Capitalized terms not otherwise defined in the Preliminary Statement shall have the meaning ascribed to them elsewhere in the Motion.

15644522_5                                            2

automatic stay to allow NMSIC[2] to litigate and liquidate its claims against the Debtor in the Pay-to-Play Action.

### Jurisdiction and Venue

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

**A. NMSIC**

4. Movant NMSIC, is the state agency that serves as trustee for and is responsible for investing the Land Grant Permanent Fund ("LGPF") and the Severance Tax Permanent Fund ("STPF") (collectively the "Public Trust Funds"), both established under the New Mexico Constitution for the benefit of the citizens of New Mexico.

5. The LGPF is New Mexico's largest sovereign wealth permanent endowment fund. The LGPF is funded with income and royalties from the sale and lease of public lands.

6. The STPF is another sovereign wealth permanent endowment fund. The STPF is generally funded with severance taxes levied on the extraction of minerals and oil and gas from leases on public lands.

7. The Public Trust Funds currently have a market value of more than $19,000,000,000.

---

[2] Debtor's father did not show up at the agreed time and place for his deposition, claiming that he was a beneficiary of the automatic stay in his son's bankruptcy case. That matter has resulted in wasteful and unnecessary motion practice in Santa Fe.

8. NMSIC makes investments on behalf of the Public Trust Funds based on work performed under its supervision by the New Mexico State Investment Office ("NMSIO"), the State Investment Officer and third-party investment advisors.

### B. The Debtor's Involvement With NMSIC

9. From 2003 through 2009, former Governor Bill Richardson (the "Governor") was the Chairman of the Council.

10. During that time, NMSIC invested the Public Trust Funds' assets primarily in core portfolios of public equities and fixed income instruments; it also invested in alternative investments, including private equity funds, hedge funds, real estate and collateralized debt obligation ("CDO") products.

11. Alternative investments were sold to NMSIC by investment management firms that were seeking to amass a pool of money – or commitments to fund money – primarily from institutional investors, including state and municipal public pension funds and public trust funds.

12. NMSIC paid the investment management firms substantial fees.

13. From January 14, 2003, through October 29, 2009, Gary Bland ("Bland") was the State Investment Officer and a member of the Council.

14. Bland was appointed by and reported to the Governor. Bland had, *inter alia*, a fiduciary duty of loyalty to the Council.

15. Bland was authorized to approve investments by the Public Trust Funds in all forms of alternative investments, except investments in private equity funds. Investments in private equity funds required a recommendation from NMSIC's Private Equity Advisory Investment Committee ("PEIAC") and final approval from the Council.

16. From early 2004 until April 2009, Aldus Equity Advisors ("Aldus") served as the third-party advisor to NMSIC with respect to investments in private equity funds. Saul Meyer ("Meyer") was the person at Aldus most involved with NMSIC.

17. Anthony Correra, the Debtor's father, was a close friend and patron of, advisor to and political fundraiser for Governor Richardson.

18. Anthony Correra was on the search committee created by the Governor that recommended Bland be hired as the State Investment Officer.

19. During Bland's tenure, the Governor directed Anthony Correra to act as an unofficial investment consultant to NMSIO and NMSIC and a de facto "gatekeeper" for the Public Trust Funds' alternative investment portfolios. In fact, during the early stages of Bland's tenure, Anthony Correra occupied office space and had a State-issued phone at the NMSIO building.

20. Bland interacted with Anthony Correra frequently, usually on a daily basis, by phone or face-to-face with respect to alternative investments.

21. Bland knew that Anthony Correra had been sanctioned for insider trading by the SEC.

22. The Debtor, Marc Correra, is Anthony Correra's son. Through his father, the Debtor developed business and social relationships with Bland and Meyer that he exploited to obtain millions of dollars in fees from investment managers willing to pay for his influence – and his father's – in their pursuit of investments from NMSIC in their hedge funds, private equity funds, real estate, and CDOs.

23. The Debtor and his father knew or willfully disregarded the fact that they had put Bland, Meyer, and Aldus in conflict positions and that the conflicts were not disclosed to

members of the Council without disabling conflicts or to the beneficiaries of the Public Trust Funds.

24. The Debtor has admitted that during Bland's tenure he received more than $18 million in fees, directly or indirectly, from fund managers, investment advisors and other service providers doing business with NMSIC.

### C. The Pay-to-Play Action

25. The Debtor is a defendant in an action commenced by NMSIC in 2011 (the "Pay-to-Play Action") in the First Judicial District Court in Santa Fe, New Mexico (the "New Mexico State District Court"). A true and correct copy of the Third Amended Complaint for Money Damages against the Debtor and his co-defendants (the "Pay-to-Play Complaint") is attached hereto as **Exhibit "A"**. NMSIC has settled claims against all of the Defendants in the Pay-to-Play Action except for claims against Barrett Wissman, Guy Riordan, the Debtor, his father, and Gary Bland.

26. Through the Pay-to-Play Action, NMSIC is asserting claims against the Debtor for, *inter alia*, aiding and abetting Bland's breach of his fiduciary duties and unjust enrichment in connection with the actions taken by the Debtor as described more fully above.

### D. The Bankruptcy Filing

27. The Debtor commenced this bankruptcy case (the "Bankruptcy Case") by filing a petition for relief under chapter 7 of title 11 of the U.S. Code (the "Bankruptcy Code") on February 22, 2016 (the "Petition Date").

### E. Anthony Correra's Abuse of the Bankruptcy Proceeding

28. NMSIC had, by agreement with Jason Bowles, counsel for Anthony Correra and the Debtor, served a notice of deposition on Anthony Correra on December 10, 2015, calling for

the deposition of Anthony Correra to be taken on February 23, 2016. The deposition was subsequently postponed to February 24, 2016. The Debtor's deposition had been scheduled to follow his father's. Both depositions were to have been taken in New York.

29. On the day before the Petition Date, Anthony Correra's lawyer Jason Bowles informed counsel for NMSIC that the Debtor was filing a bankruptcy case that day or the next and that Anthony Correra would not appear for his scheduled deposition. NMSIC's counsel responded that the automatic stay in the Debtor's case would not apply to Anthony Correra. Anthony Correra nevertheless refused to attend his scheduled deposition, claiming the stay imposed by the Debtor's Bankruptcy Case excused his refusal.

30. NMSIC subsequently filed with the New Mexico State District Court Plaintiff's Motion for Order Compelling Deposition of Defendant Anthony Correra, which is attached hereto as **Exhibit "B"**. Anthony Correra continues to resist appearing for his deposition in the Pay-to-Play Action on the basis of the automatic stay. As this Court is aware, there is no basis for the adult parent of an individual debtor to seek to avoid attendance at a deposition in reliance on the automatic stay in a child's chapter 7 case.

### F. The Debtor's Statements and Schedules

31. The Debtor filed his statement of financial affairs (as amended, the "SOFA") [Docket No. 16] and schedules [Docket No. 15] on March 14, 2016. The Debtor filed an amended SOFA [Docket No. 34] and certain amendments to the Schedules [Docket No. 33] on March 29, 2016 (as amended, the "Schedules"). The Debtor's SOFA states that the Debtor transferred $3,735,000 to his father in 2014 and 2015 as "loan repayments". The Debtor's Schedules state that as of the Petition Date the Debtor owed his father $1,532,180. In the Debtor's amended petition [Docket No. 32], the Debtor estimated that his liabilities were

between $100,000,001 and $500,000,000. The only claim that the Debtor has not marked as contingent, unliquidated, or disputed is the $1,532,180 claim allegedly held by the Debtor's father.

32. The Debtor has identified over $4 million in exempt assets, primarily in the form of two IRA accounts (totaling over $3 million) and four custodial accounts (totaling over $1 million) for which the Debtor is the sole custodian, purportedly holding funds for the benefit of the Debtor's two minor children.

### G. The 341 Meeting

33. On March 30, 2016, the chapter 7 trustee (the "Trustee") commenced the section 341 meeting in this case (the "341 Meeting"). A certified transcript of the 341 Meeting is attached hereto as **Exhibit "C"** (the "Transcript"). In the 341 Meeting, the Debtor testified that his family members (essentially his father) pay all of his bills, including his legal fees. See Transcript p. 24, lns 8-11; p. 27, lns 14-24; p. 28, lns 9-20; p. 30, lns 2-15. The Debtor further testified that he maintains (post-petition) an American Express Card which he uses to pay those expenses that he does not pay through his existing bank accounts. Transcript p. 28, lns 6-11; pp. 70, ln 25 through 71, ln 6; p. 75, lns 13-20. As the Trustee pointed out, American Express does not appear to have been provided notice of the Bankruptcy Case. *See* Creditor Matrix; Transcript pp. 70, ln 25 through 71, ln 4. The Debtor testified that he continues to receive financial support from his father in the form of check deposits and wire transfers which he claimed were loans.[3]

---

[3] The Debtor claims that the millions of dollars of those fees from his family were loans for which documentation exists and which he would provide. Transcript at p 61, ln 9-12. Interestingly, in the Pay-to-Play action the Debtor never produced these documents in response to requests that plainly called for their production. See Defendant Marc Correra's Objections and Responses to Plaintiff's Request for Production, served on May 26, 2015, a copy of which is attached hereto as **Exhibit "D"**.

15644522_5     8

Transcript pp. 80-84. The Debtor testified that virtually all of his financial support is in the form of loans from his father. Transcript p. 27, lns 16-17; p. 30, lns 2-15.

34. Various parties, including representatives of NMSIC, made inquiries into the Debtor's purportedly exempt assets. The Debtor informed parties-in-interest and the Trustee that he will provide documentation in support of his claimed exemptions. Transcript pp. 58, ln 4 through 61, ln 10.

35. The 341 Meeting has been adjourned to May 4, 2016.

### Relief Requested

36. NMSIC requests entry of an order lifting the automatic stay for "cause" pursuant to Bankruptcy Code § 362(d)(1) to permit NMSIC to liquidate its claims against the Debtor, by continuing to litigate the Pay-to-Play Action against the Debtor.

37. NMSIC also requests that the order contain a finding and/or conclusion that the automatic stay in the Debtor's Bankruptcy Case does not act as a stay against any action, including any attempt to obtain discovery, taken by NMSIC against the Debtor's father, Anthony Correra, in the Pay-to-Play Action.

### Basis for Relief Requested

**A. Cause Exists to Lift the Automatic Stay to Allow the Pay-to-Pay Action to Continue Against the Debtor**

38. Bankruptcy Code § 362(d)(1) provides in relevant part that a bankruptcy court "shall grant relief from the stay… for cause…" 11 U.S.C. § 362(d)(1). The party seeking relief from the automatic stay needs to establish only a factually and legally sufficient basis for relief. *See* 11 U.S.C. § 362(g); *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986). "Cause" is not defined in the Bankruptcy Code, and courts interpret the term on a case-by-case basis. *See e.g. Reitnauer v. Texas Exotic Feline Found.* (*In re Reitnauer*), 152 F.3d

341, 343 n.4 (5th Cir. 1998). Congress, however, provided some guidance regarding what constitutes "cause," specifically mentioning "a desire to permit an action to proceed to completion in another tribunal" and "the lack of…interference with the pending bankruptcy case." H.R. REP. No. 95-595, 343-44 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6300. Thus, "[c]ause is an intentionally broad and flexible concept, made so in order to permit the courts to respond in equity to inherently fact-sensitive situations." *Mooney v. Gill*, 310 B.R. 543, 546-47 (N.D. Tex. 2002) (internal citations omitted).

39. The Fifth Circuit Court of Appeals has not established a binding standard for determining "cause." *See e.g. Id.* at 546; *In re Fowler*, 259 B.R. 856, 860 (Bankr. E.D. Tex. 2001); *In re Choice ATM Enters., Inc.*, No. 14-44982-DML, 2015 Bankr. LEXIS 689, *10 (Bankr. N.D. Tex. March 4, 2015) ("Even among bankruptcy courts in this circuit, no single approach prevails."). In general, bankruptcy courts have shaped various multi-factor tests responsive to individual circumstances to assist in determining whether cause exists to lift an automatic stay to allow a creditor to pursue pending litigation in a separate forum.[4] *In re Choice*

---

[4] For example, in In *In re Johnson*, 115 B.R. 634, 636 (Bankr. D. Minn. 1989), the court identified the following seven factors: (1) Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate; (2) whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter; (3) whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial was deferred; (4) whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter; (5) whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit; (6) whether the creditor has a probability of success on the merits; (7) and . . . whether the interests of the debtor and the estate would be better served by the resolution of the threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

In *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) the court identified the following twelve factors: (1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for

*ATM Enters., Inc.*, 2015 Bankr. LEXIS 689 at *7-11.[5] In this case, the *Johnson* factors are especially illustrative. In particular,

   a. Judicial economy will be served by allowing the pending Pay-to-Play Action to proceed in the New Mexico State District Court. The matter has been litigated extensively in the state forum for nearly five years. Bringing the portion of the Action related to the Debtor to the Bankruptcy Court would create a multiplicity of suits, piecemeal litigation, and unnecessary expenses for the court system and the parties. In contrast, lifting the stay will prevent these negative externalities and allow the Action to proceed as a whole.

   b. The New Mexico State District Court is intimately familiar with the facts surrounding the Pay-to-Play Action. A trial on the claims raised in the Pay-to-Play Action is set for November 2016. Trial in the Bankruptcy Court will be far further in the future. Therefore, litigation in the state court would be more efficient and expeditious.

   c. The Pay-to-Play Action is nearly trial-ready and significant resources would be wasted if trial is deferred. As noted, trial is currently scheduled for November 2016. NMSIC has invested sizeable expenses and effort to prepare the case to this point. To delay and unwind NMSIC's efforts at this juncture would be an additional and unnecessary burden on New Mexico taxpayers.

   d. The Pay-to-Play Action consists entirely of claims under New Mexico state law that can be most efficiently adjudicated by a New Mexico state court. Furthermore, the New Mexico State District Court has handled this matter from day one. Though not a specialized tribunal, it has developed substantial expertise with respect to the complicated subject matter and the individuals and entities involved in the dispute.

---

defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) whether movant's success in the foreign proceeding would result in judicial lien avoidable by the debtor under Section 522(f); (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) the impact of the stay on the parties and the balance of harm.

The variety of multi-factor tests provided by the courts only provides further illustration of fact-intensive nature of the inquiry.

[5] Not all factors are relevant to an individual case. For example, here it is not necessary to address issues such as whether insurance coverage with a duty to defend is available, as that issue is irrelevant.

  e. Full relief cannot be accorded to all non-debtor parties in the Pay-to-Play Action without the Debtor's participation.

  f. The NMSIC has been highly successful in its pursuit of defendants in the Pay-to-Play Action. Although past results are not indicative of future, the NMSIC is confident that it has a high probability of success on the merits in the state court action.

  g. The interests of the debtor and the estate would <u>not</u> be better served by resolution of bankruptcy issues in the Bankruptcy Court. In fact, by lifting the stay NMSIC and Debtor will be able to conclude their long running dispute in a New Mexico forum that has otherwise handled the litigation. The result will be a final, liquidated claim. In contrast (and in tandem), NMSIC will be pursuing a non-dischargeability claim in the bankruptcy court. Lifting the stay will thereby facilitate the centralization of purely bankruptcy issues and disputes concerning the estate. This is the most efficient and cost-effective manner in which to handle these claims.

  h. Litigation of the Pay-to-Play Action would not prejudice the Debtor or any other creditors in the Debtor's case. NMSIC does not anticipate that the Debtor's other creditors will have any interest or reason to participate in the Pay-to-Play Action, and in any event, many of the Debtor's other creditors are located in New Mexico and would therefore be better positioned to participate in a proceeding in New Mexico than elsewhere.

  i. The Debtor will not be prejudiced if the stay is lifted. The Debtor's father pays his legal fees and is a co-defendant. As discussed, litigating the dispute in the state court will also go far towards ensuring a more efficient resolution of the claims. This will serve to protect, not prejudice the Debtor or the bankruptcy estate.

  40. Other equitable factors likewise weigh in favor of lifting the automatic stay. For example, there is evidence that the Debtor and his father have improperly used this Bankruptcy Case to thwart NMSIC's ability to conduct discovery against the Debtor's father. The Disclosure of Compensation of Attorney for Debtor [Docket No. 18] reveals that it was the Debtor's father, not the Debtor that paid the Debtor's attorney here. The Debtor's admissions at the 341 Meeting confirmed that his father pays all of his bills. Prior to the filing of the Bankruptcy Case, the Debtor's father refused to be deposed in connection with the State Court Action alleging that the automatic stay imposed by this Bankruptcy Case extended to any attempt

to obtain discovery from the Debtor's father. Those events suggest that the Debtor's father is seeking to benefit improperly from his son's bankruptcy case, which the Debtor's father is funding.

41. The Debtor's estate will also be benefitted by allowing the State Court Action to continue. The Debtor's Schedules disclose his ownership of significant assets valued at over $4 million. While the Debtor has designated many of those assets as exempt, certain of those designations will likely be challenged and disallowed. Therefore, there may be significant assets available for distribution to creditors. The administration of the Debtor's estate will be benefited by the expeditious liquidation of claims against the Debtor, including NMSIC's claim against the Debtor.

42. Further, even if the Debtor's estate does not have any assets for distribution to creditors, NMSIC will otherwise be severely prejudiced by further delay to the Pay-to-Play Action. The Debtor is a key defendant in the Pay-to-Play Action and without his participation full resolution of the case is not possible. NMSIC has been working for nearly half a decade on behalf of New Mexico's citizens to recover money taken in violation of the public trust. It is essential as an institutional matter that the Pay-to-Play Action be resolved locally and as expeditiously as possible so that there can finally be closure to this corruption story.

43. In sum, there is significant cause to lift the automatic stay. NMSIC's claims arise under New Mexico law. The claims are scheduled to be heard in a multi-day trial (which would likely mirror the amount of time necessary for the claim estimation process in this Court). The trial has been scheduled before the New Mexico State District Court which is intimately familiar with the underlying facts and the litigation that has occurred to date. New Mexico is therefore an eminently appropriate forum in which to resolve NMSIC's claims against the Debtor. In

addition, a judgment from the New Mexico court will serve the essential function of liquidating NMSIC's claim in what will likely be an asset case (as noted, the Debtor's Schedules disclose assets valued at over $4 million). It would also be remarkably inefficient and a waste of judicial resources for both this Court and the New Mexico State District Court to have the New Mexico State District Court try the Pay-to-Play Action against the non-Debtor defendants and an empty chair, only to then duplicate the same process in the Bankruptcy Court. Furthermore, liquidating NMSIC's claim in the New Mexico State District Court will go beyond just eliminating the need to go through the claims adjudication process in this Court. It will also fix a number of factual issues, sharply reduce the burden on this Court's docket, and perhaps allow for the avoidance of a second trial.

### B. The Automatic Stay in the Debtor's Bankruptcy Cause Does Not Act as a Stay of Actions Against the Debtor's Father

44. It is axiomatic that the automatic stay provided for by 11 U.S.C. § 362 applies solely to the debtor, and not to non-debtor third parties. *See e.g. Edge Petroleum Operating Co. v. GPR Holdings, L.L.C.* (*In re TXNB Internal Case*), 483 F.3d 292, 301 (5th Cir. 2007) ("Section 362(a) operates to stay only actions against bankruptcy petitioners and their property."); *McCratic v. Bristol-Myers Squibb & Co.*, 183 B.R. 113, 116 (N.D. Tex. 1995) ("While the automatic stay of 11 U.S.C. § 362 precludes further prosecution of the plaintiffs' suit against [the Debtor] in state court, the plaintiffs' claims against all of the other defendants may certainly proceed there. The automatic stay applies only to the debtor and not to the alleged co-tortfeasors.") (citing *GA TX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711 (5th Cir. 1985) ("By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to co-tortfeasors")).

45. Anthony Correra, a non-debtor defendant in the Pay-to-Play Action, has to date argued that the automatic stay in the Debtor's case applies to him. In fact, Anthony Correra has refused to attend a scheduled deposition, claiming the stay imposed by the Debtor's Bankruptcy Case excused his refusal. Anthony Corerra has no basis for refusing to attend his deposition in reliance on the automatic stay imposed by his child's chapter 7 case.

46. As such, NMSIC respectfully requests that the Court enter an order specifically ruling that the automatic stay in this proceeding does not apply to Anthony Correra.

47. WHEREFORE, the Movant, the New Mexico State Investment Council, respectfully requests that the Court (i) grant the relief requested in the Motion and (ii) grant such other and further relief to which it is justly entitled.

RESPECTFULLY SUBMITTED this 20th day of April, 2016.

**HAYNES AND BOONE, LLP**

By: */s/ Jarom J. Yates*
Jarom J. Yates
State Bar No. 24071134
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: 214.651.5000
Facsimile: 214.651.5490
Email: jarom.yates@haynesboone.com

and

John B. Nolan
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
Telephone: 860.275.0100
Facsimile: 860.275.0343
Email: jbnolan@daypitney.com

and

Kenneth W. Ritt
**DAY PITNEY, LLP**
One Canterbury Green
Stamford, CT 06901
Telephone: 203.977.7300
Facsimile: 203.977.7301
Email: kwritt@daypitney.com

and

James C. Jacobsen
Assistant Attorney General
Appearing Pursuant to L.B.R. 2090-1(f)
**NEW MEXICO ATTORNEY GENERAL'S OFFICE**
111 Lomas Blvd. NW, Suite 300
Albuquerque, NM 87102-2368
Telephone: 505.222.9085
Facsimile: 505.222.9006
jjacobsen@nmag.gov

**ATTORNEYS FOR NEW MEXICO STATE INVESTMENT COUNCIL**

## CERTIFICATE OF CONFERENCE

The undersigned counsel for movant New Mexico State Investment Council hereby certifies that on April 19, 2016, he conferred by telephone with Mark A. Weisbart, counsel to the Chapter 7 Debtor regarding the relief requested in the Motion. Mr. Weisbart informed the undersigned that the Debtor does not currently consent to the relief requested in the Motion. Movant will continue conferring with counsel to the Debtor regarding a consensual resolution of the Motion.

       /s/ Jarom J. Yates
Jarom J. Yates

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 20, 2016, a true and correct copy of the foregoing document was served (i) upon the parties on the attached Service List via e-mail where so indicated or via United States First Class Mail, postage prepaid, and (ii) by email upon the parties authorized to receive electronic notice in this case pursuant to the Court's ECF filing system.

       /s/ Jarom J. Yates
Jarom J. Yates

# SERVICE LIST

**Debtor:**

Marc Anthony Correra
6041 Village Bend Dr., Apt. 2011
Dallas, TX 75206

Marc Anthony Correra
69 Avenue Victor Hugo
75116 Paris
France

**Counsel for Debtor:**

Mark A. Weisbart
James S. Brouner
The Law Office of Mark A. Weisbart
12770 Coit Road, Suite 541
Dallas, TX 75251
Email: weisbartm@earthlink.net
Email: brounerj@earthlink.net

**United States Trustee:**

Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242

**Chapter 7 Trustee:**

James W. Cunningham
Jim Cunningham & Associates, Inc.
6412 Sondra Dr.
Dallas, TX 75214-3451

**Secured Creditors:**

Nexity
10-12 Rue Marc Bloch
92110 Clichy
France

PC Village Apartments Dallas, LP
5454 Amesbury
Dallas, TX 75206