Jarom J. Yates
State Bar No. 24071134
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: 214.651.5000
Facsimile: 214.651.5490
Email: jarom.yates@haynesboone.com

James C. Jacobsen
Assistant Attorney General
Appearing Pursuant to L.B.R. 2090-1(f)
**NEW MEXICO ATTORNEY GENERAL'S
OFFICE**
111 Lomas Blvd. NW, Suite 300
Albuquerque, NM 87102-2368
Telephone: 505.222.9085
Facsimile: 505.222.9006
jjacobsen@nmag.gov

John B. Nolan
Admitted *Pro hac vice*
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
Telephone: 860.275.0100
Facsimile:  860.275.0343
Email: jbnolan@daypitney.com

Kenneth W. Ritt
Admitted *Pro hac vice*
**DAY PITNEY, LLP**
One Canterbury Green
Stamford, CT 06901
Telephone: 203.977.7300
Facsimile:  203.977.7301
Email: kwritt@daypitney.com

**ATTORNEYS FOR NEW MEXICO STATE INVESTMENT COUNCIL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| MARC ANTHONY CORRERA | § | CASE NO. 16-30728-SGJ-7 |
| | § | |
| Debtor. | § | |

### MOTION OF NEW MEXICO STATE INVESTMENT COUNCIL PURSUANT TO BANKRUPTCY RULE 2004 FOR RULE 2004 EXAMINATION OF THE DEBTOR AND PRODUCTION OF DOCUMENTS

**A HEARING ON THE MOTION HAS BEEN SET FOR AUGUST 10, 2016, AT 9:30 AM BEFORE THE HONORABLE STACEY G. C. JERNIGAN, AT THE UNITED STATES BANKRUPTCY COURT, EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, 14TH FLOOR, COURTROOM NO. 1, DALLAS, TEXAS 75242.  RESPONSES TO THE MOTION MUST BE FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, 12TH FLOOR, DALLAS, TEXAS 75242 BEFORE 4 P.M PREVAILING CENTRAL TIME ON AUGUST 8, 2016.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN.**

**IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT IN THE MOTION.**

The New Mexico State Investment Council ("NMSIC") hereby files this *Motion of New Mexico State Investment Council Pursuant to Bankruptcy Rule 2004 or Rule 2004 Examination of the Debtor and Production of Documents* (the "Motion") and respectfully represents as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") provides the legal predicate for the relief sought.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

**A. NMSIC**

3.      Movant NMSIC, is the state agency that serves as trustee for and is responsible for investing the Land Grant Permanent Fund ("LGPF") and the Severance Tax Permanent Fund ("STPF") (collectively the "Public Trust Funds"), both established under the New Mexico Constitution for the benefit of the citizens of New Mexico.

4.      The LGPF is New Mexico's largest sovereign wealth permanent endowment fund.  The LGPF is funded with income and royalties from the sale and lease of public lands.

5.      The STPF is another sovereign wealth permanent endowment fund.  The STPF is generally funded with severance taxes levied on the extraction of minerals and oil and gas from leases on public lands.

6.      The Public Trust Funds currently have a market value of more than $18,000,000,000.

7.      NMSIC makes investments on behalf of the Public Trust Funds based on work performed under its supervision by the New Mexico State Investment Office ("NMSIO"), the State Investment Officer and third-party investment advisors.

### B.  The Pay-to-Play Action

8.      The Debtor is a defendant in an action commenced by NMSIC in 2011 (the "Pay-to-Play Action") in the First Judicial District Court in Santa Fe, New Mexico (the "New Mexico State District Court").

9.      Through the Pay-to-Play Action, NMSIC is asserting claims against the Debtor for, *inter alia*, aiding and abetting the breach of fiduciary duties by a fiduciary of NMSIC and unjust enrichment in connection with the actions taken by the Debtor in connection with certain investments by NMSIC.[1]

### C.  The Bankruptcy Filing

10.     The Debtor commenced this bankruptcy case (the "Bankruptcy Case") by filing a petition for relief under chapter 7 of title 11 of the U.S. Code (the "Bankruptcy Code") on February 22, 2016 (the "Petition Date").

### D.  The Debtor's Statements and Schedules and 341 Meeting

11.     The Debtor first filed his schedules of assets and liabilities (as amended, the "Schedules") and statement of financial affairs (as amended, the "Statements" or "SOFA") on March 14, 2016.  The Debtor has amended certain of the Statements and Schedules various times since March 14, 2016.

---

[1] A more fulsome description of the allegations in the Pay-to-Play Action is contained in the Lift Stay Motion (as defined herein).

12.    On March 30, 2016, the chapter 7 trustee (the "Trustee") commenced the section 341 meeting in this case (the "341 Meeting").

13.    The 341 Meeting was adjourned to May 4, 2016 and was concluded on that date.

14.    In connection with the 341 Meeting, the Trustee requested various documents from the Debtor.  The Debtor has produced some, but not all, of the documents requested by the Trustee.

15.    In Schedule C of the Debtor's schedules the Debtor has identified various assets as exempt (the "Debtor's Claimed Exemptions").   The Debtor's Claimed Exemptions are comprised primarily of two accounts listed in the Debtor's Schedules as individual retirement accounts (the "IRA Accounts"), valued by the Debtor at approximately $3 million.

16.    The Trustee has requested that the Debtor produce a history of all contributions made to the two IRA Accounts.  The Debtor has not provided any contribution history to the Trustee.

17.    In the Schedules, the Debtor revealed that he is the custodian for certain custodial accounts for his two minor children, including two accounts at Phoenix Financial Services (the "Phoenix Financial Custodial Accounts").  Each of the Phoenix Financial Custodial Accounts holds securities valued at approximately $500,000.   The account statements relating to the Phoenix Financial Custodial Accounts reveal that in October 2015, $1 million in stock was transferred into the two accounts.  341 Transcript 2, pp. 50-54.  Although the Debtor testified at his 341 Meeting that he is the only person that manages the investments in those accounts, and even though the accounts each hold only two stocks, the Debtor testified that he could not remember what the source of the $1 million dollars in stock was. *Id.*

18.    The Debtor's SOFA also reveals that the Debtor transferred over $3.7 million to his father in the two years preceding the filing of his bankruptcy case.  SOFA 18.  The Debtor has produced certain notes and loan agreements between his father, and or an entity owned or controlled by his father.  The Debtor also testified that he has received financial support from both his parents.

### E.  The Debtor's Divorce

19.    The Debtor was formerly married to Claudia Da Costa Correra ("Ms. Da Costa"). In 2010, Ms. Da Costa filed a divorce petition in Texas (the "Texas Divorce Proceeding").  In January 2011, the Debtor filed a dueling divorce petition in Paris (the "Paris Divorce Proceeding").  The Debtor's SOFA discloses that the Debtor transferred an undisclosed sum of money to his ex-wife Ms. Da Costa in connection with a consensual divorce settlement embodied in a divorce decree entered in 2014 in the Paris Divorce Proceeding (the "Divorce Decree").[2]  The Divorce Decree reveals that the amount the Debtor transferred to Ms. Da Costa pursuant to their divorce settlement is over $4 million.

20.    The Divorce Decree also contains certain annexes and exhibits that reveal that the Debtor had a net worth of not less than $15,773,000 as of February 1, 2009.  Included in the Debtor's assets were investments in various hedge funds with investments totaling approximately $3.7 million.  The annexes and exhibits to the Divorce Decree also show that sometime before September 30, 2012 the Debtor liquidated all but approximately $1 million of the Debtor's various hedge fund investments.  The annexes and exhibits to the Divorce Decree further show that the Debtor's net worth decreased by over $3.6 million to approximately $12,150,586 as of September 30, 2012, an amount nearly equal to the total amount held by the

---

[2] The Debtor's Divorce Decree, which was produced by the Debtor in connection with the 341 Meeting, includes an official English translation.

Debtor in hedge fund investments.  Further discovery is necessary to determine, *inter alia*, when the hedge fund investments were liquidated, why the hedge fund investments were liquidated, and how the proceeds of those liquidated hedge fund investments were directed, used, and/or transferred.

21.     The Divorce Decree also identifies various other assets not accounted for in the Debtor's Schedules and Statements.  For example, the Divorce Decree provided that the Debtor would retain all of his interests, if any, in the following:  (i) a generation skipping trust of which the Debtor was at one time a beneficiary; (ii) multiple bank accounts for which the Debtor has not provided an accounting; (iii) Ajax, Cabrera, McMurray Energy Corp.; and (iv) Sandia Assets, and interests in the Atlantic Richfield Company.[3]

22.     The Trustee and NMSIC have both asked the Debtor for Ms. Da Costa's current address.  The Debtor has at all times denied that he knows Ms. Da Costa's address or her whereabouts.

### F.  NMSIC's Motion to Lift the Stay

23.     On April 20, 2016, NMSIC filed its *Amended Motion of New Mexico State Investment Council for Relief from the Automatic Stay* (the "Lift Stay Motion") [Docket No. 39] pursuant to which NMSIC sought relief from the automatic stay to allow it to pursue its claims against the Debtor in the Pay-to-Play Action.  A preliminary hearing on the Lift Stay Motion was held on May 19, 2016 (the "Lift Stay Hearing").

24.     At the Lift Stay Hearing, the Court granted the Lift Stay Motion and lifted the automatic stay to permit NMSIC to liquidate its claims against the Debtor in the New Mexico State District Court.

---

[3] The assets identified in (iii) and (iv) were not further defined in the Divorce Decree.

### G. Deadlines Relating to Objections to Discharge, Dischargeability, and Exemptions

25.     May 31, 2016, was originally the deadline (i) for objecting to discharge under Bankruptcy Code § 727(a)(2) - (9) and (ii) to challenge whether certain debts are dischargeable under Bankruptcy Code § 523(a)(2), (4), or (6).   The deadline for objecting to the Debtor's exemptions was June 3, 2016.

26.     On May 31, 2016, NMSIC filed its *Motion of New Mexico State Investment Council for Extension of (I) Deadline to Object to Discharge Pursuant to 11 U.S.C. § 727, (II) Deadline to File Complaint to Determine Dischargeability Pursuant to 11 U.S.C. § 523(a)(2), (4), or (6) with Respect to its Claims Against the Debtor, and (III) Deadline to Object to the Debtor's Claimed Exemptions* (the "Deadlines Motion") [Docket Nos. 78 and 79].   The Court entered its order approving the Deadlines Motion on June 2, 2016 (the "Deadlines Order") [Docket No. 87].   In the Deadlines Order, the Court:

> a.  extended the deadline for NMSIC to file a complaint to determine dischargeability of its claims against the Debtor under 11 U.S.C. § 523(a)(2), (4), or (6) until thirty (30) days after the date that a final non-appealable judgment is entered in the Pay-to-Play Action;
>
> b.  extended the deadline for NMSIC to object to the Debtor's discharge under 11 U.S.C. § 727(a)(2) - (9) for sixty (60) days after the May 31, 2016 deadline; and
>
> c.  extended the deadline for NMSIC to object to the Debtor's Claimed Exemptions until sixty (60) days after the June 3, 2016 deadline.[4]

27.     The Debtor has filed his *Motion to Partially Modify Order Granting Extension of (I) Deadline to Object to Discharge Pursuant to 11 U.S.C. § 727, and (II) Deadline to File*

_____

[4] On June 16, 2016 the Debtor filed his *Motion to Partially Modify Order Granting Extension (I) Deadline to Object to Discharge Pursuant to 11 U.S.C. § 727, (II) Deadline to File Complaint to Determine Dischargeability Pursuant to 11 U.S.C. § 523(a)(2), (4), or (6) with Respect to its Claims Against the Debtor, and (III) Deadline to Object to the Debtor's Claimed Exemptions* (the "Motion to Reconsider") [Docket No. 101].

*Complaint to Determine Dischargeability Pursuant to 11 U.S.C. § 523(a)(2), (4) or (6) with Respect to its Claims against the Debtor* (the "Motion to Modify") [Docket No. 100] pursuant to which the Debtor is seeking a modification of the Deadlines Order with respect to the extension to object to dischargeability under 11 U.S.C. § 523(a)(2), (4), or (6).  NMSIC filed its response to the Motion to Modify on July 11, 2016 [Docket No. 106].

28.    Given the limited extension granted to NMSIC to object to discharge and to object to the Debtor's Claimed Exemptions, NMSIC has limited time to obtain a sufficient understanding of the Debtor's assets and exemptions to determine whether it should object to the Debtor's discharge and exemptions.

29.    NMSIC anticipates that it will be filing a motion seeking a further extension of the deadlines contained in the Deadlines Order.

### Relief Requested

30.    NMSIC requests entry of an order pursuant to Bankruptcy Rule 2004 (i) ordering the production of the documents identified in **Exhibit A** (the "Document Requests") and (ii) ordering the examination of the Debtor by NMSIC regarding the topics identified in **Exhibit B**.

### Basis for Relief Requested

31.    Pursuant to Rule 2004, "on the motion of any party in interest, the court may order the examination of any entity" relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Fed. R. Bankr. P. 2004(a)-(b).

32.    Pursuant to Rule 2004, the Court may also compel the production of documents. Fed. R. Bankr. P. 2004(c).  The scope of Rule 2004 is broad and is intended to allow parties-in-interest to fully investigate any matter affecting the administration of the estate.  *First Fin. Sav.*

*Assoc'n, Inc. v. Kipp (In re Kipp)*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (citing *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr.D.Mass.1983)) ("[T]he scope of [a Rule 2004] examination is virtually unlimited.").

33.     As the Debtor's potentially largest creditor, NMSIC seeks to conduct an examination of the Debtor regarding, among other things (and as more fully described on Exhibit B), the Debtor's right to obtain a discharge under Bankruptcy Code § 727, whether the Debtor is entitled to an exemption with respect to the Debtor's Claimed Exemptions, and whether certain transfers and obligations by the Debtor with various parties and entities are subject to avoidance as fraudulent transfers and/or preferences.  NMSIC has conferred with the Debtor's counsel about a potential examination date but due to the uncertainty surrounding the Debtor's document production, the parties have not agreed upon a time or date.  NMSIC proposes to conduct the examination of the Debtor (the "Rule 2004 Examination") on a date and time mutually convenient to the Debtor and NMSIC's counsel during the month of September or October at the Dallas office of Haynes and Boone, LLP, located at 2323 Victory Ave., Suite 700, Dallas, Texas 75219.

34.     Pursuant to Rule 2004, NMSIC additionally requests the production of the documents set forth in Exhibit A.  NMSIC requests that the Debtor be ordered to deliver copies of the documents in accordance with the instructions contained on Exhibit A to the offices of Haynes and Boone, LLP, Attn: Jarom J. Yates, 2323 Victory Ave., Suite 700, Dallas, Texas 75219, to be received on or before September 9, 2016 at 4 p.m. (CDT) in order to allow NMSIC an opportunity to review the documents prior to the Rule 2004 Examination.

35.     The Rule 2004 Examination and Document Requests are necessary to ensure that NMSIC is able to meaningfully and substantially investigate, *inter alia*,:  (i) the Debtor's right to

a discharge under Bankruptcy Code § 727, (ii) whether the Debtor's Claimed Exemptions are entitled to exemption under Bankruptcy Code § 522, (iii) the appropriateness of the Debtor's many transfers during the years preceding the Petition Date, including without limitation, (a) the Debtor's transfers to his ex-wife pursuant to the Divorce Decree, (b) the Debtor's transfers to his parents, including the $3.75 million in transfers identified in the Debtor's Statement, and (c) the transfers to the UTMA Accounts; and (iv) any other matter that is appropriate under Bankruptcy Rule 2004.

36.     As required by Local Bankruptcy Rule 2004-1, counsel to NMSIC has been conferring with counsel for the Debtor for several weeks regarding the 2004 Examination of the Debtor and production of documents.  Counsel to the Debtor has suggested that the parties should enter into a protective order before any production of documents.  Debtor's counsel has as yet not provided a draft protective order.  The parties have not come to an agreement on either the Document Requests or the scope of the 2004 Examination, nor the appropriate date for the 2004 Examination.  NMSIC will continue conferring with the Debtor leading up to the hearing on this Motion.

37.     WHEREFORE, the Movant, the New Mexico State Investment Council, respectfully requests that the Court (i) grant the relief requested in the Motion and (ii) grant such other and further relief to which it is justly entitled.

RESPECTFULLY SUBMITTED this 15th day of June, 2016.

**HAYNES AND BOONE, LLP**

By:  */s/ Jarom J. Yates*

Jarom J. Yates
State Bar No. 24071134
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: 214.651.5000
Facsimile:  214.651.5490
Email: jarom.yates@haynesboone.com

and

John B. Nolan
**DAY PITNEY LLP**
242 Trumbull Street
Hartford, CT 06103
Telephone: 860.275.0100
Facsimile:  860.275.0343
Email: jbnolan@daypitney.com

and

Kenneth W. Ritt
**DAY PITNEY, LLP**
One Canterbury Green
Stamford, CT 06901
Telephone: 203.977.7300
Facsimile:  203.977.7301
Email: kwritt@daypitney.com

and

James C. Jacobsen
Assistant Attorney General
Appearing Pursuant to L.B.R. 2090-1(f)
**NEW MEXICO ATTORNEY GENERAL'S
OFFICE**
111 Lomas Blvd. NW, Suite 300
Albuquerque, NM 87102-2368
Telephone: 505.222.9085
Facsimile: 505.222.9006
jjacobsen@nmag.gov

**ATTORNEYS FOR NEW MEXICO STATE
INVESTMENT COUNCIL**

## <u>CERTIFICATE OF CONFERENCE</u>

As more fully explained in paragraph 36 of the Motion, the undersigned counsel for movant New Mexico State Investment Council hereby certifies that he has conferred by telephone and email with James Brouner, counsel to the Chapter 7 Debtor regarding the relief requested in the Motion.   The Debtor has not approved the relief requested in the Motion. NMSIC will continue communicating with the Debtor's counsel to seek a consensual resolution of the matters contained in the Motion.

*/s/ Jarom J. Yates*          
Jarom J. Yates

# EXHIBIT "A"

## DOCUMENT REQUESTS

### Instructions

1.      Marc Correra (the "Deponent" or "you") is instructed to produce any and all documents which are in Deponent's possession, custody, or control on or before September 9, 2016 at 4 p.m. prevailing Central time at the offices of Haynes and Boone, LLP, Attn: Jarom Yates, 2323 Victory Ave., Suite 700, Dallas, Texas 75219.  Possession, custody, or control includes constructive possession whereby the Deponent has a right to compel the production of a document from a third party (including an agent, attorney, accountant, bookkeeper, authority, relative, or representative).

2.      If you object to any of the following Document Requests, you must state the legal and factual basis for each objection.  If you object to only a portion of a Document Request, you must identify the specific portion of the Document Request to which you object and must respond fully to the remainder of the Document Request.

3.      All documents produced in response to these document requests shall be produced in accordance with the Document Production Specifications attached hereto or in a similar reasonably usable format to be agreed upon by the requesting and producing parties.

4.      Each Document Request shall operate and be responded to independently and, unless otherwise indicated, no Document Request limits the scope of any other Document Request.

5.      These Document Requests are deemed to be continuing.  If after answering, you become aware of any further information responsive to these Document Requests, you are required to produce such additional Documents and things and/or provide such additional information.

6.      All words, terms and phrases not specifically defined in these Document Requests are to be given their normal and customary meaning in the context in which they are used herein.

7.      In the event that you seek to withhold any Document, thing, or information on the basis that it is purportedly privileged or entitled to some other limitation of discovery, you:

        a.      shall supply a numerical list of the Documents and things for which a privilege or other limitation of discovery is claimed, indicating:

                (a)      the name of each author, writer, sender, or initiator of such document or thing, if any;

                (b)      the name of each recipient, addressee, or party to whom such document or thing was intended, if any;

                (c)      the date of such document or thing, if any, or an estimate thereof and so indicated as an estimate if no date appears on said document;

(d)  the general subject matter as described in the document; and

(e)  the claimed grounds for privilege or other limitation of discovery.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall have the following meaning:

1.      "Anthony Correra" means the Debtor's father.

2.      "Arising out of," "relating to," or "evidencing" refers to any act, work, meeting, oral or written communication, or document, referring, directly or indirectly, in any way to the described facts, or embodying, mentioning, concerning, referring to, connected with, commenting on, responding to, showing, describing, analyzing, or reflecting, directly or indirectly, such facts.

3.      "Bankruptcy Code" means title 11 of the United States Code.

4.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

5.      "Chapter 7 Case" means the case under chapter 7 of title 11 of the U.S. Code commenced by the Debtor on the Petition Date.

6.      "Chapter 7 Trustee" means the current chapter 7 trustee appointed in the Chapter 7 Case, any successor trustee appointed in the Chapter 7 Case, and any and all representatives, employees, agents, and attorneys acting for or on behalf of such chapter 7 trustee.

7.      "Communication" means any Documents that record or represent a communication.

8.      "Debtor" refers to and is intended to include the above-captioned Debtor, Marc Correra, including his representatives, employees, agents, attorneys, and all other natural persons or business entities acting or purporting to act on his behalf, whether authorized to do so or not.

9.      "Divorce Decree" means that certain divorce decree dated April 8, 2014 issued by the "Tribunal de Grande Instance de Paris" in Paris France, along with all annexes and attachments thereto, including without limitation the English translation of the divorce decree attached as Annex D, pursuant to which the settlement agreement regarding, *inter alia*, the division of property between the Debtor and Ms. Da Costa was approved and made effective.

10.     "Document" and "documents" as used in these Document Requests means (a) all non-identical pieces of written, printed, or electronic matter that provide information, including, without limitation, emails, text messages, chats, instant messages, facsimiles, websites, social media entries, databases, calendar entries, spreadsheets, notes, jottings, diaries, communications, and all drafts, alterations, modifications, changes, and amendments of any of the foregoing; and (b) graphic or aural records or representations of any kind, including, without limitation, photographs, charts, graphs, microfiches, microfilm, videotape, recordings, motion pictures, voice mails, video files, tapes, cassettes, disks, recordings, and all transcriptions, in whole or in part, of any of the foregoing.  A draft or non-identical copy is a separate document within the

meaning of this term.  A document with handwritten notes, markings, comments, "blind" copy notes, editing marks, facsimile transmission "legends" or "slugs," etc. shall not be deemed identical to one without such modifications, additions or deletions.  Each document shall be produced in its entirety, without abbreviation or expurgation, including all attachments or other matter affixed thereto.

11.    "Financial records" means any document or file containing information relating to, without limitation, itemized records for income and expenses and the names of the transferees / transferors and all applicable bank statements, any use of funds, borrowing of funds, transfer of funds, application for credit, financial accounting, bank statement, financial statement, invoices, insurance, or any document relating to finances, accounting, or financial transactions.  Financial records include accounting records as well as backup for those records.

12.    "Gaetana Correra" means the Debtor's mother.

13.    "IRA Accounts" means the individual retirement accounts identified in the Debtor's Schedules and SOFA along with any predecessor retirement accounts.

14.    "Michele Rosenberg" means the Debtor's accountant and CPA of that name.

15.    "Ms. Da Costa" means the Debtor's former wife, Claudia Da Costa Correra.

16.    "Ms. Gianardi" means Anita Gianardi.

17.    "Paris Divorce Proceeding" means that certain divorce proceeding commenced by the Debtor in January, 2011 in Paris, France.

18.    "Person(s)" or "entit(y)(ies)" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors-in-interest.

19.    "Petition Date" means February 22, 2016.

20.    "Possession, custody, or control" of any item means that the person either has physical possession of the item or has a right to possession that is equal or superior to the person who has physical possession of the item.  Each of the requests contained herein are directed to documents in your possession, custody or control.

21.    "Referring to," "relating to," "referencing," "pertaining to," or "concerning" (or any variation thereof), as used herein, shall mean comprising, addressing, referring to (whether by name or not, whether directly or indirectly), discussing, describing, reflecting, supplementing, supporting, negating, amending, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, mentioning, applying to, containing, reproducing, paraphrasing, or in any way factually, legally, or logically connected to the matter inquired thereof.

22.    "Schedules" means the schedules filed by the Debtor in the Chapter 7 Case, as amended, as required by Bankruptcy Code § 521 and Bankruptcy Rule 1007.

23.     "SOFA" means the statement of financial affairs filed by the Debtor in the Chapter 7 Case, as amended, as required by Bankruptcy Code § 521 and Bankruptcy Rule 1007.

24.     "Statement" means a written statement signed or otherwise adopted or approved by the person making it or a stenographic, mechanic, or other type of recording, or any transcription that is a substantially verbatim recital of a statement made by a person and contemporaneously recorded.

25.     "Tangible things" includes everything that is not a document.

26.     "Texas Divorce Proceeding" means that certain divorce proceeding commenced by Ms. Da Costa in Texas in 2010.

27.     "UTMA Accounts" means the two accounts currently at Phoenix Financial Services ending in account numbers 0706 and 0707 purportedly held for the benefit of the Debtor's minor children, along with any predecessor accounts, including without limitation the custodial accounts ending in 9345 and 9374 previously managed by Janney Montgomery Scott LLC.

28.     All other capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the above Motion to which this Exhibit is attached.

29.     The conjunctions "and" and "or" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any specification.

30.     The singular form of a word includes the plural form of that word and the plural form of a word includes the singular form.

31.     Unless otherwise specified herein, the relevant time period of these requests is from February 22, 2010 to the present.

## DOCUMENT PRODUCTION SPECIFICATIONS

Documents referenced in the Document Requests shall be produced according to the following specifications:

### Paper Documents

Paper documents shall be scanned as 300 dpi single-page Group IV .TIF image files, named the same as the sequential Bates production number endorsed on each image. Images shall be contained in a folder called "IMAGES".

The imaged files shall be OCRed and multi-page text files shall be provided and named the same as the Bates number of the first page of the document, with the extension .txt. If OCR fails, a placeholder text file shall be produced for each page (such as NONE or NO OCR or NO TEXT EXTRACTED). The OCR text files shall be contained in a folder called "TEXT".

To preserve the manner in which they are maintained, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. Start and end points, as well as family relationships for organized compilations of separate documents (e.g., a binder containing several separate documents behind numbered tabs), shall be reflected in proper coding of the BegBates, EndBates, BegAttach, EndAttach, ParentId and AttchIds fields described below.

### Electronic Documents

Electronic files (Word, e-mail, etc.) shall be converted to single-page Group IV .TIF image files, named the same as the Bates production number endorsed on each image. Excel spreadsheets, audio and video files shall be produced in their native format with a single .TIF placeholder page indicating that the file is being produced in native format and shall be named the same as the Bates number endorsed on the placeholder page. Images shall be contained in a folder called "IMAGES". Native files shall be contained in a folder called "NATIVES".

The text contained within the native files shall be extracted and saved in multi-page text files named the same as the Bates number of the first page of the document, with the extension .txt. Any native files for which no text can be extracted shall be OCRed and saved in multi-page text files named the same as the Bates number of the first page of the document, with the extension .txt. If OCR fails, a placeholder text file shall be produced for each page (such as NONE or NO OCR or NO TEXT EXTRACTED). All text files shall be contained in a folder called "TEXT".

E-mail shall be produced together with all attachments and family relationships shall be reflected in proper coding of the BegBates, EndBates, BegAttach, EndAttach, ParentId and AttchIds fields described below. Notwithstanding the above, non-responsive e-mail attachments may be withheld from production provided that the production includes a slip-sheet bearing the designation "Non-Responsive Attachment."

### Load Files

A standard Relativity/Concordance delimited text file (.DAT) (required metadata fields are below) and an image linking load file in Opticon format (.OPT) shall be provided in a folder

called "DATA".  Load files shall not span across media (CDs, DVDs, hard drives, etc.).  A separate volume shall be created for each piece of media delivered.  The first line of the .DAT file must be a header row identifying the field names.  The .DAT file must use the following Concordance default delimiters: Comma ASCII character (020) Quote þ ASCII character (254).

### Media

All documents shall be produced via either a secure ftp site, hard drives, CDs, DVDs or other mutually agreeable media.  Each production volume shall be given a common designator and the volume names shall be consecutive (e.g., Vol001, Vol002, . . .).  Production media labels shall contain the name of the producing party, production date, volume number and Bates range.

### Example of Production Data Folder Structure

| Vol001 | | |
|---|---|---|
| | DATA | load files (.dat, and .opt) |
| | IMAGES | single page tif files |
| | TEXT | multi-page OCR files |
| | NATIVES | native files that are produced |

**Required Fields**

| Field Name | Field Description | Sample Values |
|---|---|---|
| BegBates | Bates number for the first page of the document. | ABC0000001 |
| EndBates | Bates number for the last page of the document. | ABC0000002 |
| BegAttach | Bates number for the first page of parent document. | ABC0000001 |
| EndAttach | Bates number for the last page of last attachment. | ABC0000005 |
| ParentId | BegBates of parent document. | ABC0000001 |
| AttchIds | BegBates of each attachment. | ABC0000003, ABC0000004 |
| Pages | Number of printed pages of the document. | 2 |
| Custodian | All custodian names, in format: Last name, First name. | Smith, Jane |
| DupCust | All custodians of duplicate documents in format: Last name, First Name, separated by a semi-colon. | Taylor, Michael; Jones, Angela |
| Confidentiality | Indicates if the document has been designated as "Confidential" . | Confidential |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for non-redacted documents. | Yes |
| Subject | Subject line of e-mail. | Text of the subject line |
| FileName | File name of documents. | filename |
| FilePath | The original file path of the documents. | \users\arnold\inbox\project X |
| Extension | The file extension. | doc |
| Title | The title property of a file. | Title |
| DocDate | Email: Sent Date & Time; Documents: Last Known Modified Date & Time. | mm/dd/yyyyhh:mm:ss |
| To | All SMTP address of email recipients, separated by a semi-colon. | Larry.murphy@email.com |

| Field Name | Field Description | Sample Values |
|---|---|---|
| From | All SMTP address of email author. | Bart.smith@email.com |
| CC | All SMTP address of email "CC" recipients, separated by a semi-colon. | Jim.James@gmail.com; bjones@yahoo.com |
| BCC | All SMTP address of email "BCC" recipients, separated by a semi-colon. | mjones@gmail.com |
| Author | The Author property of a file. | John Doe |
| PathToText | The relative path to the accompanying text file. | \Vol001\TEXT\ABC00001.txt |
| PathToNative | The relative path to the accompanying native file. | \Vol001\NATIVES\spreadsheet .xls |
| Volume | The production number or reference from the production. | Vol001 |

## DOCUMENT REQUESTS

1.      All Documents produced by or on behalf of the Debtor to the Chapter 7 Trustee since the Petition Date.

2.      All the Debtor's financial records created or otherwise generated during the six years prior to the Petition Date.

3.      All documents relating to any transactions with a value greater than $1,000 entered into by or on behalf of the Debtor during the six years prior to the Petition Date.

4.      All documents evidencing any transactions entered into by the Debtor and/or Ms. Da Costa not made in connection with the Divorce Decree at any time during the six years prior to the Petition Date and thereafter.

5.      All documents evidencing any payments greater than $500 made by the Debtor for or on behalf of his minor children during the six years prior to the Petition Date and thereafter.

6.      All documents evidencing any transactions entered into by the Debtor and/or Ms. Da Costa in connection with the Divorce Decree.

7.      All documents produced by the Debtor in connection with the Paris Divorce Proceeding.

8.      All documents produced by the Debtor in connection with the Texas Divorce Proceeding.

9.      All documents produced by Ms. Da Costa in connection with the Paris Divorce Proceeding.

10.     All documents produced by Ms. Da Costa in connection with the Texas Divorce Proceeding.

11.     All documents filed of record in the Paris Divorce Proceeding.

12.     All documents filed of record in the Texas Divorce Proceeding.

13.     All documents evidencing any transaction entered into by any individual or entity for the benefit of the Debtor during the six years prior to the Petition Date and thereafter.

14.     Copies of all drivers licenses held by the Debtor during the six years prior to the Petition Date.

15.     Copies of all passports, including all pages, held by the Debtor during the six years prior to the Petition Date.

16.     All documents, including without limitation account statements, relating to each of the following bank accounts listed in the Divorce Decree during the six years prior to the Petition Date and thereafter:

a.  Century Bank Santa Fe (SDN) (0268)
b.  Century Bank Santa Fe (XXXX3647)
c.  Century Bank Santa Fe XXXX1404)
d.  Chase Bank (XXXXX4703)
e.  Barclays (XXXX70101)
f.  Wells Fargo (XXXXXX7697)
g.  Merlin Security account
h.  Paypal account
i.  Barclays (XXXXXX20101)
j.  Barclays premier life savings account (XXXXXXX5401)
k.  Lazard Frer Accounts:
   - XXX62B06
   - XXXXX62B01
   - XXXXX62B 02
   - XXXXX62B31
   - XXX90X06
   - XXXXX90X10

17.    The order entered in the Paris Divorce Proceeding referenced in paragraph 10 of the Debtor's *Objection to Motion of New Mexico State Investment Council Creditors for Relief From the Automatic Stay* [Docket No. 50] that froze "all of the Debtor's non-exempt financial accounts," including without limitation any translations of that order.

18.    All documents relating to the freezing of the Debtor's accounts pursuant to the above-referenced order entered in the Paris Divorce Proceeding.

19.    All documents, including without limitation account statements, relating to each of the bank accounts listed in the Debtor's Schedules during the six years prior to the Petition Date and thereafter.

20.    All documents, including without limitation account statements, relating to any bank account in the Debtor's name or to which the Debtor had access during the six years prior to the Petition Date and thereafter.

21.    All documents, including without limitation account statements, relating to any other bank account, stock account, or other similar account in the Debtor's name or to which the Debtor had access during the six years prior to the Petition Date or thereafter.

22.    All documents relating to your investments and/or holdings, whether directly or indirectly, in the following entities as identified in the annexes and exhibits to the Divorce Decree beginning on December 31, 2008:  (i) Stone Tower Credit Fund; (ii) Alkeon Growth Partners, LP; (iii) Tranquility Fund, LP; (iv) Loeb Arbitrage Fund, LP; (v) High Quality ABS Opportunities Fund, LP; and (vi) Commerce Street Income Partners, LP.

23.    All documents relating to the sale, liquidation, transfer, or other disposition of your investments and/or holdings, whether directly or indirectly, in the following entities identified in the annexes and exhibits to the Divorce Decree that occurred between December 31, 2008 and September 30, 2012:  (i) Stone Tower Credit Fund; (ii) Alkeon Growth Partners, LP; (iii) Tranquility Fund, LP; (iv) Loeb Arbitrage Fund, LP; (v) High Qaulity ABS Opportunities Fund, LP; and (vi) Commerce Street Income Partners, LP.

24.    All documents relating to, demonstrating, or explaining the reason for the decrease in the value of the assets listed in the Divorce Decree from approximately $15,773,000 on February 1, 2009 to approximately $12,150,586 on September 30, 2012.

25.    All documents evidencing communications relating to any of the accounts identified in the Divorce Decree, the Schedules, or any other account owned or controlled by the Debtor during the six years prior to the Petition Date.

26.    All documents relating to any transactions greater than $500 conducted by the Debtor outside the United States during the six years prior to the Petition Date.

27.    All documents, including without limitation credit card statements, for the following credit cards during the six years prior to the Petition Date and thereafter:  Chase (account ending in 1364); Chase (account ending in 4033); Chase (account ending in 7694); Chase (account ending in 5336); Chase (account ending in 8255); Chase (account ending in 9975); Chase (account ending in 0992).

28.    All documents relating to any other credit cards in the Debtor's name during the six years prior to the Petition Date and thereafter.

29.    All documents relating to any credit cards in the Debtor's possession, custody or control or to which the Debtor had access during the six years prior to the Petition Date and thereafter.

30.    All documents, including without limitation copies of checks and wire confirmations, relating to the following transfers out of the Debtor's accounts listed below:

    a.    Transfers out of TD Bank (4070):
- May 27, 2014: $500k wire out to Tina Correra;
- May 27, 2014: $250k wire out to National Financial Services LLC;
- August 1, 2014: $500k wire out to Interactive Brokers LLC;
- August 27, 2014: $633,653.27 wire out.

    b.    Transfers out of Trustmark (3491):
- May 14, 2014: $25k wire out to Marc Correra;
- August 26, 2014: $90k wire out to Anthony Correra;
- August 27, 2014: $200k wire out to Anthony Correra;
- October 2, 2014: $10k wire out to David Elias;
- November 4, 2014: $100k wire out to Anthony Correra.

    c.    Transfers out of TDECU (7633):
- April 17, 2015: $9,500 wire out to account 87905.3207051;

- October 29, 2015: $95k wire out.

31.    All documents, including without limitation copies of checks and wire confirmations, relating to the following transfers in to the accounts listed below:

    a.    Transfers in to TD Bank (4070):
- December 30, 2013: $150k Wire in from Marc Correra 8406 Lemonmint Meado;
- December 31, 2013: $231,686.30 wire in from CARPA;
- March 19, 2014: $7,500 wire in from Marc Correra 8406 Lemonmint Meado;
- May 30, 2014: $218,180 wire in from Commerce Street Income Partners;
- June 24, 2014:  $1,160,000 wire in from Marc Correra 6725 South Fry Road.

    b.    Transfers in to Trustmark (3491):
- April 4, 2014: Wire in from Marc Correra;
- May 13, 2014: $100k wire in from Marc Correra;
- August 26, 2014: $200k wire in from Marc Correra;
- August 27, 2014: $200k wire in from Marc Correra;
- October 31, 2014: $105k wire in from Marc Correra.

    c.    Transfers in to HSBC (4341):
- July 25, 2013: $11k wire in from Marc Correra 8406 Lemonmint Meadow Dr., Katy TX;
- August 12, 2013: $7,434.14 wire in from Marc Correra 8406 Lemonmint Meadow Dr., Katy TX.

    d.    Transfers in to TDECU (7633):
- April 16, 2015: $101,617.48 wire in from account 73210.3207051 GL;
- October 5, 2015: $200k wire transfer in from account 73210.3207051 GL;
- November 6, 2015: $35k wire in.

32.    All documents, including without limitation copies of checks and wire confirmations, relating to the following transfers into and/or deposits into the Debtor's accounts listed below:

    a.    Interactive Brokers (1391):
- May 5, 2014: Transfer in $2,326,458 in stocks (BP and XOM) from Lazard Common stocks account (662B 02);
- May 7, 2014: EFT in of $492,853.59;
- August 1, 2014: EFT of $500k.

    b.    Trustmark (3491):
- June 3, 2014: $220k deposit.

33.    All documents, including without limitation copies of checks and wire confirmations, relating to the following transfers out of the Debtor's accounts listed below:

a. Interactive Brokers (1391)
   ▪ May 6, 2014: Disbursement of $150k;
   ▪ May 7, 2014: Disbursement of $95k;
   ▪ May 7, 2014: Disbursement of $5k;
   ▪ May 13, 2014: Disbursement of $100k;
   ▪ May 19, 2014: Disbursement of $525k;
   ▪ May 23, 2014: Disbursement of $800k;
   ▪ June 24, 2014: Disbursement of $1,160,000;
   ▪ August 26, 2014: Disbursement of $200k;
   ▪ August 27, 2014: Disbursement of $200k;
   ▪ October 31, 2014: Disbursement of $105k.
b. TD Bank (4070)
   ▪ February 25, 2014: $125k check out;
   ▪ May 23, 2014: $35k check out.
c. Trustmark (3491)
   ▪ October 22, 2014: $22.5k check out;
   ▪ November 10, 2014: $50k check out;
   ▪ November 14, 2014: $17k check out.
d. TDECU (7633)
   ▪ April 26, 2016: $10k withdrawal.

34.    All documents, including without limitation account statements and wire transfer confirmations, relating to each and every transfer by, for, at the direction of, or on behalf of you or Ms. Da Costa that occurred in connection with or relating to the Divorce Decree.

35.    All documents relating to the purchase and/or transfer of the 100,000 shares of Grafoid Inc. restricted stock that were transferred into the Phoenix Financial custodial account (0706) listed in the Debtor's Schedules on October 22, 2015.

36.    All documents relating to the purchase and/or transfer of the 100,000 shares of Grafoid Inc. restricted stock that were transferred into the Phoenix Financial custodial account (0707) listed in the Debtor's Schedules on October 22, 2015.

37.    All documents relating to any loan agreements between the Debtor and Anthony Correra.

38.    All documents relating to any loan agreements between the Debtor and Gaetana Correra.

39.    All documents relating to any other loan agreements between the Debtor and any other person or entity entered into during the six years prior to the Petition Date.

40.    All documents relating to any funds loaned to the Debtor by either Anthony Correra or Gaetana Correra.

41.     All documents relating to any amounts loaned pursuant to any of the following loan agreements between the Debtor and his father Anthony Correra and/or entities owned or controlled by Anthony Correra:

     a.  Revolving Credit Agreement dated as of January 10, 2012;
     b.  Promissory Note Dated as of July 1, 2009;
     c.  Promissory Note Dated September 1, 2003;
     d.  Loan Agreement dated as of November 1, 2001;
     e.  Promissory Note dated as of May 1, 2007.

42.     All documents relating to the repayment by the Debtor of any amounts loaned under the following loan agreements:

     a.  Revolving Credit Agreement dated as of January 10, 2012;
     b.  Promissory Note Dated as of July 1, 2009;
     c.  Promissory Note Dated September 1, 2003;
     d.  Loan Agreement dated as of November 1, 2001;
     e.  Promissory Note dated as of May 1, 2007.

43.     All end of year statements provided to Anthony Correra in compliance with Section 3 of the Revolving Credit Agreement dated as of January 10, 2012.

44.     All documents which refer to, relate to, or evidence loans, gifts, or transfers of property, income or other funds with a value greater than $1,000 between the Debtor and Ms. Da Costa during the six years prior to the Petition Date and thereafter.

45.     All documents which refer to, relate to, or evidence loans, gifts, or transfers of property, income or other funds between the Debtor and the Debtor's father, Anthony Correra, during the six years prior to the Petition Date.

46.     All documents which refer to, relate to, or evidence loans, gifts, or transfers of property, income or other funds with a value greater than $1,000 between the Debtor and the Debtor's mother, Gaetana Correra, during the six years prior to the Petition Date.

47.     All documents relating to the Debtor's "past or current, direct or indirect rights or the use thereof, which have been held on his behalf or on behalf of third parties" in (i) Sandia Assets, (ii) Generation Skipping Trust, or (iii) Atlantic Richfield Company, as referenced in the Divorce Decree, including without limitation all documents relating to the sale or transfer of any of the foregoing assets, including without limitation all documents relating to the transfer or other use of the proceeds of any such sale or transfer.

48.     All documents relating to any trust or similar entity of which the Debtor is or has been a beneficiary during the six years prior to the Petition Date and thereafter.

49.     All documents relating to any trust or similar entity of which the Debtor is or has been a fiduciary during the six years prior to the Petition Date.

50.     All documents relating to the Debtor's past or present, direct or indirect rights and contracts with or relating to: "Ajax, Cabrera, McMurray Energy Corp.," including in partnership with Michael Moldenhauer as referenced in the Divorce Decree.

51.     The accountants' compilation report referenced in Exhibit A to Annex B of the Divorce Decree.

52.     All documents referenced or identified in the accountants' compilation report referenced in Exhibit A to Annex B of the Divorce Decree.

53.     All documents referred to, used by, or relied upon by the party that created the accountants' compilation report referenced in Exhibit A to Annex B of the Divorce Decree.

54.     The accountants' letter dated December 17, 2012 referenced in Exhibit B to Annex B of the Divorce Decree.

55.     All documents referenced or identified in the accountants' letter dated December 17, 2012 referenced in Exhibit B to Annex B of the Divorce Decree.

56.     All documents referred to, used by, or relied upon by the party that created the accountants' letter dated December 17, 2012 referenced in Exhibit B to Annex B of the Divorce Decree.

57.     All documents relating to any debts owed by Mr. Correra to the Mr. Sloves referenced in the Divorce Decree.

58.     All documents relating to any payments made by Mr. Correra to Mr. Sloves during the six years prior to the Petition Date.

59.     All documents provided by the Debtor, or on his behalf, to Ajax Investments LLC (referenced in the September 2012 statement for the Merlin/Wells Account (4848 LC2) as a third party/interested party) during the six years prior to the Petition Date.

60.     All documents, including financial statements, provided by the Debtor, or on his behalf, to any party (including without limitation, any custodian of the accounts listed in the Debtor's Schedules or SOFA or the Divorce Decree) relating to the Debtor's income, net worth, or financial holdings during the six years prior to the Petition Date.

61.     All financial records between the Debtor and any entity in which the Debtor owns any interest, directly or indirectly.

62.     All financial records between the Debtor and any entity in which the Debtor owned any interest, directly or indirectly, at any time during the six years prior to the Petition Date through the present.

63.     All documents, including financial statements, relating to the income, net worth, assets and liabilities, or financial holdings of any entity owned or controlled by the Debtor, whether directly or indirectly, during the six years prior to the Petition Date.

64.     All documents showing the location of all of the Debtor's bank accounts during the six years prior to the Petition Date.

65.     The lease agreement, including any amendments and/or modifications, between the Debtor and Asylum Adventures, LLC and/or any of its predecessors-in-interest relating to the Debtor's apartment at 9 Bank St. #3, New York, NY 10014.

66.     All documents relating to the Debtor's ownership, possession, custody, or control of any real property that was owned, possessed, or controlled by the Debtor during the six years prior to the Petition Date

67.     All documents describing any property, real or personal, tangible or intangible, owned by the Debtor with a value greater than $5,000 during the six years prior to the Petition Date, whether or not reported in the Debtor's schedules.

68.     All documents pertaining to any property, real or personal, tangible or intangible, with a value greater than $5,000 owned by the Debtor during the six years prior to the Petition Date, whether or not reported in the Debtor's schedules.

69.     All documents describing any property, real or personal, tangible or intangible, owned by any entity in which the Debtor owned, directly or indirectly, at least a 15% interest during the six years prior to the Petition Date through the present.

70.     All documents pertaining to any property, real or personal, tangible or intangible, owned by any entity in which the Debtor owned, directly or indirectly, at least a 15% interest at any time during the six years prior to the Petition Date through the present.

71.     All documents describing any property, real or personal, tangible or intangible, owned by any entity at any time during the six years prior to the Petition Date and thereafter, which the Debtor operated or controlled, directly or indirectly, whether or not the Debtor owned an interest in the entity.

72.     All documents evidencing agreements between the Debtor and any entity in which the Debtor owned any interest, directly or indirectly, during the six years prior to the Petition Date.

73.     All documents evidencing communications by or to the Debtor relating to any loans between the Debtor and:

      a.  The Debtor's father Anthony Correra;

      b.  Any other family member of the Debtor;

      c.  Ms. Da Costa;

      d.  Mr. Sloves, as identified in the Divorce Decree;

      e.  Any other person or entity.

74.      All documents evidencing communications by or to the Debtor relating to any transfers of stock or funds valued at more than $1,000 between the Debtor and:

      a.  The Debtor's father Anthony Correra;

      b.  Any other family member of the Debtor;

      c.  Ms. Da Costa;

      d.  Mr. Sloves, as identified in the Divorce Decree;

      e.  Any other person or entity.

75.      All communications between the Debtor and his father, Anthony Correra, relating to the Debtor's decision to file for bankruptcy.

76.      All documents relating to the investments in the Debtor's IRA Accounts beginning in 2001.

77.      All documents relating to any predecessor accounts to the Debtor's IRA Accounts.

78.      All documents relating to the Debtor's individual retirement account with PaineWebber, account number C593076, as identified in Annex B of the Divorce Decree.

79.      All documents evidencing communications by or to the Debtor relating to investments in the IRA Accounts.

80.      All documents evidencing communications by or to the Debtor relating to the accounts listed in the Debtor's Schedules or SOFA or the Divorce Decree.

81.      All documents evidencing communications by or to the Debtor relating to any other accounts in the name of or otherwise controlled by the Debtor during the six years prior to the Petition Date.

82.      All documents evidencing communications by or to the Debtor relating to any entity in which the Debtor owns any interest, directly or indirectly.

83.      All documents evidencing communications by or to the Debtor relating to any other entity in which the Debtor owned any interest, directly or indirectly, during the six years prior to the Petition Date through the present.

84.      All documents evidencing the Debtor's professional relationship with any entity in which the Debtor owned, directly or indirectly, any interest during the six years prior to the Petition Date.

85.      All of the Debtor's state and federal tax returns for the years 2010, 2011, 2012, 2013, 2014, and 2015.

86.     All of the state and federal tax returns relating to the UTMA Accounts for the years 2010, 2011, 2012, 2013, 2014, and 2015.

87.     All of the state and federal tax returns of any entity owned or controlled by the Debtor, whether directly or indirectly, for the years 2010, 2011, 2012, 2013, 2014, and 2015.

88.     All documents relating to communications between the Debtor and Richard Cardinale during the six years prior to the Petition Date.

89.     All documents sent by the Debtor to Richard Cardinale during the six years prior to the Petition Date.

90.     All documents received by the Debtor from or on behalf of Richard Cardinale or Phoenix Investments.

91.     All communications between the Debtor and Michele Rosenberg during the six years prior to the Petition Date.

92.     All documents in the possession, custody, or control of Michele Rosenberg that belong to the Debtor or any entity owned or controlled by the Debtor.

93.     All documents in the possession, custody, or control of Michele Rosenberg that were created for or on behalf of the Debtor or any entity owned or controlled by the Debtor.

94.     All documents that were created, drafted, generated, or otherwise produced by Michele Rosenberg for or on behalf of the Debtor or any entity owned or controlled by the Debtor.

95.     All documents relating to that certain lawsuit styled SDN Advisors, LLC and Marc Correra v. Claudia Correra, Case No. D-101-CV-201301282, filed on May 9, 2013 in the New Mexico District Court in Santa Fe or to the facts and circumstances alleged therein.

96.     All documents relating to communications between you and Anita Gianardi-Patterson relating to that certain lawsuit styled SDN Advisors, LLC and Marc Correra v. Claudia Correra, Case No. D-101-CV-201301282, filed on May 9, 2013 in the New Mexico District Court in Santa Fe or to the facts and circumstances alleged therein.

97.     All documents relating to communications between you and Ms. Da Costa regarding that certain lawsuit styled SDN Advisors, LLC and Marc Correra v. Claudia Correra, Case No. D-101-CV-201301282, filed on May 9, 2013 in the New Mexico District Court in Santa Fe or to the facts and circumstances alleged therein.

98.     All documents relating to that certain lawsuit styled Anita Gianardi v. Claudia Correra, Case No. D-101-CV-201301301, filed on May 11, 2013 in the New Mexico District Court in Santa Fe or to the facts and circumstances alleged therein.

99.     All documents relating to communications between you and Anita Gianardi relating to that certain lawsuit styled Anita Gianardi v. Claudia Correra, Case No. D-101-CV-201301301,

filed on May 11, 2013 in the New Mexico District Court in Santa Fe or to the facts and circumstances alleged therein.

100.    All documents relating to communications between you and Ms. Da Costa regarding that certain lawsuit styled Anita Gianardi v. Claudia Correra, Case No. D-101-CV-201301301, filed on May 11, 2013 in the New Mexico District Court in Santa Fe or to the facts and circumstances alleged therein.

101.    All documents relating to the following entities during the six years prior to the Petition Date:  (i) LLMN Investments, LLC; (ii) Baltimore Casino Investments, LLC; (iii) Pitanga, LLC; (iv) L2 Asset Management; and (v) SDN Advisors, LLC, including without limitation documents relating to transactions entered into by the foregoing entities, bank accounts in the name of the foregoing entities, your investments in the foregoing entities, the operations of the foregoing entities, and the formation, dissolution, and winding-up of the foregoing entities.

# EXHIBIT "B"

## EXAMINATION TOPICS

1. The documents produced in response to the Document Requests.

2. The Debtor's Schedules and SOFA.

3. All transactions with a value greater than $500 entered into by the Debtor during the six years prior to the Petition Date and since the Petition Date, including without limitation any transfers or sales of the Debtor's property.

4. The Debtor's financial transactions outside the United States.

5. The Debtor's property outside the United States, including any property owned or controlled by the Debtor during the six years prior to the Petition Date.

6. The Debtor's international travels during the six years prior to the Petition Date, including the date, location, purpose, and duration of any such travels.

7. The Divorce Decree, the transfers that occurred in connection with the Divorce Decree, the Paris Divorce Proceeding, and the Texas Divorce Proceeding.

8. Any transfers made by the Debtor to Ms. Da Costa during the six years prior to the Petition Date and thereafter.

9. Any matter relating to the various loan agreements between the Debtor and his father or mother, and or entities owned or controlled by the Debtor's father or mother.

10. Any loans, gifts, or transfers of income or other funds between the Debtor and the Debtor's father, Anthony Correra, the Debtor's mother, Gaetana Correra, the Debtor's ex-wife, Ms. Da Costa, and the Debtor's minor children during the six years prior to the Petition Date.

11. Any loans, gifts, or transfers of income or other funds between the Debtor and any other person or entity during the six years prior to the Petition Date and thereafter.

12. Matters relating to the Debtor's residence during the six years prior to the Petition Date and thereafter.

13. The investments in the Debtor's IRA Accounts during the six years prior to the Petition Date and thereafter.

14. Any transactions engaged in by or relating to the IRA Accounts beginning in 2001.

15. The contributions to the Debtor's IRA Accounts from the first time the Debtor or his employer began making contributing funds to any retirement, pension, or other account that have subsequently been transferred to the Debtor's IRA Accounts.

16. The investments in any of the Debtor's other accounts during the six years prior to the Petition Date.

17. The Debtor's state and federal tax returns relating to the UTMA Accounts for the years 2010, 2011, 2012, 2013, 2014, and 2015.

18. The Debtor's state and federal tax returns for the years 2010, 2011, 2012, 2013, 2014, and 2015.

19. The state and federal tax returns of any entity owned or controlled by the Debtor, whether directly or indirectly, for the years 2010, 2011, 2012, 2013, 2014, and 2015.

20. The financial advice the Debtor has received from Richard Cardinale.

21. The financial advice provided by Richard Cardinale to or on behalf of the Debtor's IRA Accounts.

22. The financial advice provided to or on behalf of the UTMA Accounts.

23. The facts and circumstances surrounding each purchase of restricted stock during the six years prior to the Petition Date and thereafter by the Debtor, the Debtor's IRA Accounts, or the UTMA Accounts.

24. The facts and circumstances surrounding each sale of restricted stock during the six years prior to the Petition Date and thereafter by the Debtor, the Debtor's IRA Accounts, or the UTMA Accounts.

25. The Debtor's reasons for purchasing the restricted stock held by the Debtor, the Debtor's IRA Accounts, or the UTMA Accounts during the six years prior to the Petition Date and thereafter.

26. The Debtor's involvement with Ajax Investments LLC during the six years prior to the Petition Date and thereafter.

27. Any documents, information or representations provided by the Debtor or on his behalf to any party (including without limitation, any custodian of the accounts listed in the Debtor's Schedules or SOFA or the Divorce Decree) relating to the Debtor's income, net worth, or financial holdings during the six years prior to the Petition Date.

28. Each of the transfers specifically identified in paragraphs 30-33 of the Document Requests, including the reason for each such transfer, the person, account, and/or entity to whom each such transfer was made, or from which each such transfer was received, as applicable.

29. The accountants' compilation report referenced in Exhibit A to Annex B of the Divorce Decree.

30. The accountants' letter dated December 17, 2012 referenced in Exhibit B to Annex B of the Divorce Decree.

31. Any business interactions, loans, and other transactions engaged in by the Mr. Sloves identified in the Divorce Decree and the Debtor or any entity affiliated with, owned (in whole or in part), or controlled by the Debtor or any of his family members.

32. Any business interactions, loans, and other transactions engaged in by and between the Debtor and Sandia Assets Management.

33. Any sales, transfers, or purchases of publicly traded securities by the Debtor during the six years prior to the Petition Date and thereafter.

34. Any sales, transfers, or purchases of non-publicly traded or otherwise restricted securities by the Debtor during the six years prior to the Petition Date and thereafter.

35. The Debtor's status as an accredited investor at all times during the six years prior to the Petition Date.

36. All matters relating to that certain lawsuit styled Anita Gianardi v. Claudia Correra, Case No. D-101-CV-201301301, filed on May 11, 2013 in the New Mexico District Court in Santa Fe, the circumstances surrounding the foregoing lawsuit, and the facts and circumstances alleged therein.

37. All matters relating to that certain lawsuit styled SDN Advisors, LLC and Marc Correra v. Claudia Correra, Case No. D-101-CV-201301282, filed on May 9, 2013 in the New Mexico District Court in Santa Fe, the circumstances surrounding the foregoing lawsuit, and the facts and circumstances alleged therein.

38. The following entities during the six years prior to the Petition Date:  (i) LLMN Investments, LLC; (ii) Baltimore Casino Investments, LLC; (iii) Pitanga, LLC; (iv) L2 Asset Management; and (v) SDN Advisors, LLC, including without limitation the transactions entered into by the foregoing entities, bank accounts in the name of the foregoing entities, the Debtor's investments in the foregoing entities, the operations of the foregoing entities, and the formation, dissolution, and winding-up of the foregoing entities.

39. Any non-publicly traded entities owned in whole or in part, directly or indirectly, by the Debtor during the six years prior to the Petition Date, including the transactions entered into by any such entity, the bank accounts in the name of any such entity, the Debtor's investments in any such entity, the operations of any such entity, and the formation, dissolution, and winding-up of any such entity.